Brent Plater (CA Bar No. 209555)
Laura Horton (CA Bar No.  288725)
WILD EQUITY INSTITUTE
474 Valencia St., Suite 295
San Francisco, CA 94103
Telephone: (415) 349-5787  Facsimile:  N/A
Email: bplater@wildequity.org;
lhorton@wildequity.org

Attorneys for Plaintiff Wild Equity Institute

Jonathan Evans (State Bar No. 247376)
CENTER FOR BIOLOGICAL DIVERSITY
351 California St., Suite 600
San Francisco, California 94104
Telephone: (415) 436-9682  Fax: (415) 436-9683
Email: jevans@biologicaldiversity.org

Shana Lazerow (CA Bar No. 195491)
Roger Lin (CA Bar No.  248144)
COMMUNITIES FOR A BETTER
ENVIRONMENT
1904 Franklin Street, Suite 600
Oakland, CA 94612
Telephone: (510) 302-0430  Fax: (510) 302-0438
Email: slazerow@cbecal.org; roger@cbecal.org

Attorneys for Plaintiffs Wild Equity Institute,
Center for Biological Diversity, and Communities
for a Better Environment

Robert A. Wyman, Jr. (CA Bar No.
94742)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California  90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:     robert.wyman@lw.com

Andrea M. Hogan (CA Bar No. 238209)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: andrea.hogan@lw.com

Attorneys for Defendants Radback
Energy, Inc. and Contra Costa
Generating Station LLC

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| **WILD EQUITY INSTITUTE, COMMUNITIES FOR A BETTER ENVIRONMENT, and CENTER FOR BIOLOGICAL DIVERSITY,** <br><br>                     Plaintiffs, <br>          v. <br><br> **RADBACK ENERGY, INC. and CONTRA COSTA GENERATING STATION LLC.** <br><br>                     Defendants. | Civil No.  13-cv-03875  MEJ <br><br> **STIPULATION TO ENTRY OF [PROPOSED] CONSENT DECREE** |

Plaintiffs Wild Equity Institute, Center for Biological Diversity, and Communities for a Better Environment (collectively, "Plaintiffs") and defendants Radback Energy, Inc. and Contra Costa Generating Station LLC (collectively, "Defendants"), hereby jointly stipulate to the Court's expeditious entry of the proposed and previously lodged Consent Decree, a true and correct copy of which is attached hereto as Exhibit A, without further notice or hearing, subject to the approval of this Court pursuant to Civil Local Rule 7-12.

WHEREAS, on August 21, 2013, Plaintiffs filed a complaint in the above-captioned matter, alleging that Defendants violated the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, and the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.* [Doc. #1].

WHEREAS, the Parties negotiated a proposed Consent Decree that resolves all of the claims in Plaintiffs' complaint and lodged the proposed Consent Decree with the Court on August 22, 2013. [Doc. #6-1].

WHEREAS, the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency received copies of the proposed Consent Decree by August 27, 2013, beginning the 45 day statutory review period provided for by 42 U.S.C. § 7604(c)(3) and described in the Joint Notice of Lodging and Request That The Court Take No Action Until A Motion For Entry Is Filed [Doc. #6], and which ends on October 11, 2013. *See* Declaration of Andrea M. Hogan at ¶¶ 2-4.

WHEREAS, on September 30, 2013, the U.S. Department of Justice filed with the Court a letter stating that the United States does not object to entry of the Consent Decree and that it waives its right to the remainder of the 45 day statutory review period. [Doc. #15].

WHEREAS, the timing of funding of the Conservation and Mitigation Fund provided for in the proposed Consent Decree is contingent upon the date of successful closing of financing for Oakley Generating Station construction, which closing is currently scheduled for October 31, 2013.

WHEREAS, the Court's expeditious entry of the proposed Consent Decree and its timely implementation is in the public interest.

STIPULATION TO ENTRY
OF [PROPOSED] CONSENT DECREE
Case No. 13-cv-3875 MEJ

WHEREAS, the Parties agree to submit the proposed Consent Decree for entry by the Court without a hearing.

THEREFORE, the Parties agree as follows:

Subject to the approval of this Court, Wild Equity Institute, Center for Biological Diversity, Communities for a Better Environment, Radback Energy, Inc., and Contra Costa Generating Station LLC now jointly stipulate to the Court's expeditious entry of the proposed and previously lodged Consent Decree attached hereto as Exhibit A, without further notice or hearing, as the judgment of the Court by signing the Consent Decree.  The Parties respectfully request the Court enter the decree as soon as practicable, but no later than October 14, 2013.

Respectfully submitted this 7th day of October, 2013.


  /s/ Brent Plater


Brent Plater (CA Bar No. 209555)
Laura Horton (CA Bar  No. 288725)
WILD EQUITY INSTITUTE
474 Valencia St., Suite 295
San Francisco, CA 94103
Telephone:  (415) 349-5787
Facsimile:  N/A
bplater@wildequity.org

Attorneys for Plaintiff Wild Equity Institute

Jonathan Evans (State Bar No. 247376)
CENTER FOR BIOLOGICAL DIVERSITY
351 California St., Suite 600
San Francisco, California 94104
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
Email: jevans@biologicaldiversity.org

Shana Lazerow (CA Bar No. 195491)
Roger Lin (CA Bar No. 248144)
COMMUNITIES FOR A BETTER ENVIRONMENT
1904 Franklin Street, Suite 600
Oakland, CA 94612
Telephone: (510) 302-0430
Fax: (510) 302-0438
Email: slazerow@cbecal.org; rline@cbelgal.org

Attorneys for Plaintiffs Wild Equity Institute, Center for Biological Diversity, and Communities for a Better Environment

STIPULATION TO ENTRY
OF [PROPOSED] CONSENT DECREE
Case No. 13-cv-3875 MEJ

1

    _/s/ Andrea M. Hogan_

2     Robert A. Wyman, Jr. (CA Bar No. 94742)
      LATHAM & WATKINS LLP
3     355 South Grand Avenue
      Los Angeles, California  90071-1560
4     Telephone:    (213) 485-1234
      Facsimile:    (213) 891-8763
5     E-mail:robert.wyman@lw.com

6     Andrea M. Hogan (CA Bar No. 238209)
      LATHAM & WATKINS LLP
7     505 Montgomery Street, Suite 2000
      San Francisco, CA 94111
8     Telephone: (415) 391-0600
      Facsimile: (415) 395-8095
9     E-mail: andrea.hogan@lw.com

10    Attorneys for Defendants Radback Energy, Inc. and
      Contra Costa Generating Station LLC

11

12    **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

13

14  Dated: 10/11/2013

15    THE HONORABLE MARIA-ELENA JAMES
      UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    STIPULATION TO ENTRY
                                    OF [PROPOSED] CONSENT DECREE
                                    Case No. 13-cv-3875 MEJ

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5-1(i)(3) I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

I hereby certify that on this day, a copy of the foregoing was filed with the Court's ECF System to be served electronically on counsel for Parties listed the Court's ECF system for this case.

Dated: October 7, 2013                    /s/ Andrea M. Hogan

Andrea M. Hogan

STIPULATION TO ENTRY
OF [PROPOSED] CONSENT DECREE
Case No. 13-cv-3875 MEJ

# Exhibit A

# CONSENT DECREE

## EXECUTED BY ALL PARTIES

1

2

3 IN THE UNITED STATES DISTRICT COURT

4 FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8

9 COMMUNITIES FOR A BETTER                  Civil No. 13-cv-3875
ENVIRONMENT, CENTER FOR
BIOLOGICAL DIVERSITY, and WILD
10 EQUITY INSTITUTE,

11

12               Plaintiffs,                CONSENT DECREE

        v.
13
CONTRA COSTA GENERATING
14 STATION, LLC and RADBACK ENERGY,
INC.
15

16               Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

1

## Table of Contents

2  I. JURISDICTION AND VENUE ................................................................................. 1

3  II. APPLICABILITY ................................................................................................. 2

4  III. DEFINITIONS .................................................................................................... 2

5  IV. CONSERVATION AND MITIGATION FUND .................................................. 4

6  V. REPORTING ......................................................................................................... 6

7  VI. AUDITS ............................................................................................................... 7

8  VII. RELEASE AND COVENANT NOT TO SUE BY PLAINTIFFS ....................... 7

9  VIII. CLAIMS BY THIRD PARTIES RELATED TO USE OF THE FUND ............ 8

10  IX. NON-TRANSFERABILITY ................................................................................ 9

11  X. INTEGRATION .................................................................................................... 9

12  XI. RETENTION OF JURISDICTION ...................................................................... 9

13  XII. NOTICES ......................................................................................................... 10

14  XIII. EFFECTIVE DATE ......................................................................................... 11

15  XIV. MUTUAL CONSTRUCTION ......................................................................... 11

16  XV. ATTORNEYS' FEES ......................................................................................... 12

17  XVI. DISMISSAL WITH PREJUDICE .................................................................... 12

18  XVII. NO ADMISSION OF LIABILITY ................................................................. 12

19  XVIII. SEVERABILITY .......................................................................................... 12

20  XIX. FEES AND COSTS .......................................................................................... 12

21  XX. NO WAIVER .................................................................................................... 13

22  XXI. CESSATION OR SUSPENSION OF PAYMENT OBLIGATIONS. .............. 13

23  XXII. AUTHORITY, SIGNATURES, AND SERVICE ........................................... 13

24  XXIII. BINDING AGREEMENT ............................................................................. 14

25  XXIV. MODIFICATION ......................................................................................... 14

26  XXV. FINAL JUDGMENT ...................................................................................... 14

27

28

1   WHEREAS, concurrently with the lodging of this Consent Decree, plaintiffs

2   Communities for a Better Environment ("CBE"), Center for Biological Diversity ("CBD"), and

3   Wild Equity Institute ("WEI") (collectively, the "Plaintiffs") file a Complaint against Contra

4   Costa Generating Station, LLC ("CCGS") and Radback Energy, Inc. ("Radback") (collectively,

5   "Defendants") pursuant to Section 304 of the Clean Air Act  ("CAA," or "the Act"), 42 U.S.C. §

6   7604; alleging that Defendants violated the Act by failing to apply for and receive a CAA

7   Prevention of Significant Deterioration ("PSD") permit for greenhouse gas ("GHG") emissions

8   from the Oakley Generating Station ("OGS"), formerly Contra Costa Generating Station, in

9   violation of 42 U.S.C § 7475 and 40 C.F.R. § 52.21; and that OGS emissions will adversely

10   impact the Lange's Metalmark Butterfly, Contra Costa wallflower and Antioch Dunes evening

11   primrose.

12   WHEREAS, the Complaint seeks declaratory and injunctive relief;

13   WHEREAS, Defendants deny all allegations in the Complaint and do not admit liability

14   with respect to any claims or assertions in the Complaint;

15   WHEREAS, Plaintiffs and Defendants (collectively, the "Parties") agree, and the Court

16   by entering this Consent Decree finds, that the settlement of this action through this Consent

17   Decree without further litigation is in the public interest, and is a fair, reasonable, and

18   appropriate means of resolving all claims in the Complaint that have been alleged through the

19   date of the lodging of this Decree;

20   WHEREAS, Plaintiffs and Defendants consent to the entry of the Decree without further

21   trial or appeal;

22   NOW, THEREFORE, before the taking of any testimony, without the adjudication or

23   admission of any issue of fact or law except as provided in Section I of this Consent Decree

24   (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED,

25   ORDERED, AND DECREED as follows:

26   **I.  JURISDICTION AND VENUE**

27   1.   The Court has jurisdiction over the Parties to and the subject matter of this action

28   under Section 304 of the Act, 42 U.S.C. § 7604, the citizen suit provision of the Act, and under

Consent Decree

1

28 U.S.C. § 1331.

2.     Venue is proper in this District under Section 304(c) of the Act, 42 U.S.C. § 7604(c) and under 28 U.S.C. § 1391 because the actions alleged as violations in the Complaint occurred and are occurring in Contra Costa County, California, the location in this District where the OGS is being constructed.  For purposes of this Decree, or any action to enforce this Decree, Plaintiffs and Defendants consent to the Court's jurisdiction over this Decree and any such action, and Plaintiffs and Defendants consent to venue in this judicial district.

3.     For purposes of this Consent Decree only, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section 304 of the Act.

## II.  APPLICABILITY

4.     The obligations of this Consent Decree shall apply to and be binding upon the Parties, as well as the Parties' officers, employees, agents, successors, and assignees, and any persons otherwise bound by law.

5.     Parties shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree.  In any action to enforce this Consent Decree, no Party shall raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

6.     Nothing in this Decree shall be interpreted as requiring Defendants to continue construction or to engage in operation of the OGS as a power plant.

## III.  DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

        a.     "BAAQMD" shall mean the Bay Area Air Quality Management District;

        b.     "CEC" shall mean the California Energy Commission;

        c.     "Complaint" shall mean the complaint filed by the Plaintiffs in this action;

Consent Decree

d.      "Consent Decree" or "Decree" shall mean this Decree;

e.      "Conservation Agreement" shall mean the Oakley Generating Station Conservation Agreement for Endangered Species Mitigation and Habitat Restoration described in Paragraph 9 of this Consent Decree;

f.      "Conservation Program" shall mean the Conservation Program described in Paragraph 9 of this Consent Decree;

g.      "Date of Lodging" shall mean the date the Consent Decree is filed for lodging with the Clerk of Court for the United States District Court for the Northern District of California;

h.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

i.      "Defendants" shall mean Contra Costa Generating Station, LLC. and Radback Energy, Inc.

j.      "Effective Date" shall have the definition provided in Paragraph 21 of this Consent Decree;

k.      "Fund" shall mean the Conservation and Mitigation Fund described in Paragraph 8 of this Consent Decree;

l.      "Fund Manager" shall mean the Conservation and Mitigation Fund Manager described in Paragraph 8 of this Consent Decree;

m.      "OGS" shall mean the Oakley Generating Station in Contra Costa County, California;

n.      "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

o.      "Parties" shall mean the Plaintiffs and Defendants;

p.      "PG&E" shall mean Pacific Gas & Electric Company;

q.      "Plaintiffs" shall mean Communities for a Better Environment, Center for

Consent Decree

3

1  Biological Diversity, and Wild Equity Institute;

2         r.      "PUC" shall mean the California Public Utilities Commission;

3         s.      "Section" shall mean a portion of this Decree identified by a roman

4  numeral;

5         t.      "Subparagraph" shall mean a subsection of a portion of this Decree

6  identified by a letter; and,

7         u.      "U.S. EPA" shall mean the United States Environmental Protection

8  Agency and any of its successor departments or agencies.

9                    **IV.  CONSERVATION AND MITIGATION FUND**

10        8.      CCGS shall, subject to the qualifications below, within thirty (30) calendar days

11  of the successful closing of financing for OGS construction, establish a Conservation and

12  Mitigation Fund ("Fund") and shall make an initial payment of Fifty Thousand Dollars ($50,000)

13  into the Fund.  CCGS shall notify the Plaintiffs of the successful close of such financing by

14  providing the Plaintiffs with email or other written notification within forty-eight (48) hours of

15  issuing the Notice to Proceed to the main OGS contractor.  Thereafter, for the next five (5)

16  quarters (i.e., every 90 days thereafter for five more quarters), subject to the qualifications below,

17  CCGS shall make an additional payment of Fifty Thousand Dollars ($50,000) into the Fund such

18  that total deposits to the Fund by the end of the sixth quarter shall be Three Hundred Thousand

19  Dollars ($300,000).  CCGS, or, unless adequate collateral reasonably acceptable to Plaintiffs is

20  set aside in escrow prior to the close of any sale of the OGS, any successor in interest to this

21  Consent Decree and/or in the ownership and/or operation of the OGS, shall, within thirty (30)

22  calendar days of the closing of a sale of the OGS or of its commercial electric power output to

23  Pacific Gas & Electric Company ("PG&E") and for each year thereafter for a total of ten (10)

24  years, subject to the qualifications below, deposit into the Fund payments in the amount of One

25  Hundred Seventy Thousand Dollars ($170,000) such that total deposits into the Fund, including

26  the six (6) quarterly payments and the ten (10) annual payments, shall equal Two Million Dollars

27  ($2,000,000).  CCGS shall provide notice to the Plaintiffs of the closing of the sale to PG&E or

28  of its commercial power output.  The quarterly and annual payments to the Fund shall be made

as long as OGS continues to operate (once it commences operation) until the end of the ten-year period, Plaintiffs remain in compliance with the terms of this Consent Decree, and this Consent Decree remains in effect.  Except as provided in Paragraph 23 (attorneys' fees), these payments shall be the total OGS-related payments by all Defendants under this Consent Decree.  The Fund shall be administered by the Conservation and Mitigation Fund Manager ("Fund Manager") who shall have access to the Fund and make use of its funds as Plaintiffs see fit provided Plaintiffs remain in compliance with this Consent Decree, this Consent Decree remains in effect, and Plaintiffs use the funds pursuant to Paragraph 9 of this Consent Decree.  The Parties agree that the Rose Foundation is an acceptable Fund Manager for purposes of this Agreement.  In the event the Rose Foundation is unable to manage the funds the Plaintiffs shall select another Fund Manager, subject to Defendants' approval which shall not be unreasonably withheld.  The Plaintiffs may delegate the reporting, administration, and auditing requirements for the Fund, Conservation Agreement, and Conservation Program to the Fund Manager.

9.     Defendants believe that the operation of OGS will not cause any of the environmental, species, or community health impacts alleged by the Plaintiffs.  However, in the interest of resolving all potential claims, Defendants agree to the use of the Fund as provided in this Paragraph.  Plaintiffs agree to use all sums in the Fund for approved species and habitat restoration or maintenance activities that will benefit conservation of the Lange's Metalmark Butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose, and for community public health, energy efficiency projects, or environmental education efforts.  The Plaintiffs or Fund Manager shall allocate approximately half of the sums in the Fund for approved species and habitat restoration or maintenance activities that will benefit conservation of the Lange's Metalmark Butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose, as defined in Subparagraph 9(a); and approximately half of the sums for community public health, energy efficiency projects, or environmental education efforts, as defined in Subparagraph 9(b).

a.     The provisions of this subparagraph shall constitute the Oakley Generating Station Conservation Agreement for Endangered Species Mitigation and Habitat Restoration ("Conservation Agreement").  Activities undertaken pursuant to these provisions shall be

Consent Decree

5

referred to as Conservation Program activities. Approved species and habitat restoration or maintenance activities include:

> (i) Captive breeding of the Lange's Metalmark Butterfly;

> (ii) Planting of the Naked stem buckwheat, Contra Costa wallflower, or Antioch Dunes evening primrose in the Antioch Refuge;

> (iii) Sponsorship of a qualified individual or individuals to study or engage in conservation efforts for the Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose;

> (iv) Creation of additional habitat for the Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose including the purchase and transport of sand or other fill material and grading work in the Antioch Refuge;

> (v) Maintenance and/or restoration of Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose habitat through invasive weed clearance and control, or other invasive weed maintenance, or invasive species removal activities in the Antioch Refuge; and/or

> (vi) Sponsorship of community education or interpretive outreach relating to preservation of the Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose.

> b. Approved community projects and outreach efforts include:

> (i) Community public health funding including funds for health services and health education at the La Raza Clinic in Oakley, California;

> (ii) Installation of air filters at local schools;

> (iii) Installation of energy efficient lighting, heating, and windows at local schools; and/or

> (iv) Environmental education and stewardship programs.

> c. Notwithstanding the above language in Paragraph 9, Thirty Thousand Dollars ($30,000) of the initial payment of Fifty Thousand Dollars ($50,000) shall be used for a Lange's metalmark butterfly captive breeding project selected by the United States Fish and Wildlife Service. The United States Fish and Wildlife Service shall provide the Fund Manager with written notice regarding when, and to whom, the funds should be released for this project.

## V. REPORTING

10. Plaintiffs and/or Fund Manager shall account for all funds removed from the Fund and expended pursuant to Paragraph 9 and maintain accounting records that include the amounts withdrawn and spent from the Fund, projects or programs funded, activities performed, and the

Consent Decree

6

1   dates of performance.  Plaintiffs and/or Fund Manager shall submit an annual report to CCGS

2   that includes a summary of all amounts withdrawn and spent from the Fund, projects or

3   programs funded, activities performed with the funds, and the dates of performance.  Any costs

4   related to the selection of and administration by the Fund Manager may, if reasonable, be

5   withdrawn from the Fund but shall not otherwise be charged to Defendants.

6                                   **VI.  <u>AUDITS</u>**

7          11.     CCGS reserves the right to hire a neutral third party to audit Plaintiffs' and/or

8   Fund Manager's expenditures from the Fund.  CCGS and Plaintiffs shall agree on the neutral

9   third party auditor in consultation with the Fund Manager.  Consent for a third party auditor will

10  not be unreasonably withheld by the Plaintiffs.  Defendants agree to fund any neutral third party

11  audit that occurs.  In the event the auditor determines that funds were not spent pursuant to the

12  terms of this Consent Decree, CCGS may seek recovery of misspent funds from the entity the

13  auditor determined misspent those funds and withhold payment of additional funds into the Fund

14  until the issues outlined in the audit are addressed to the satisfaction of the neutral third party

15  auditor.

16                  **VII.  <u>RELEASE AND COVENANT NOT TO SUE BY PLAINTIFFS</u>**

17         12.

18                  a.      Plaintiffs hereby forever release and discharge Defendants, PG&E, any

19  and all governmental bodies with jurisdiction related to OGS, and their respective past and

20  present officers, directors, partners, shareholders, members, joint venturers, agents, employees,

21  representatives, predecessors, successors, parents, subsidiaries, affiliates and/or assigns

22  ("Released Parties"), from any and all manner of actions, claims, causes of action, losses, suits,

23  debts, accounts, covenants, contracts, agreements, demands, obligations, direct, incidental,

24  consequential or punitive damages, liens, costs, expenses, fees and liabilities, in law or in equity,

25  whether administrative or judicial, whether subject to the jurisdiction of the U.S. EPA, PUC,

26  CEC, BAAQMD or any other federal, state, local or regional permitting agency, in each case of

27  any nature whatsoever, whether asserted or otherwise, known or unknown, fixed or contingent,

28  matured or unmatured (collectively, a "Claim" or "Claims"), which all or any of the Plaintiffs

ever had or now have or may hereafter have against the Released Parties or any of them to the extent arising out of, resulting from or based in any way upon, (a) the development, construction, ownership, proposed sale, commissioning or initial operation of OGS prior to the close of the sale of OGS to PG&E; (b) any issue raised in the 60-day notice letters specifically regarding OGS, complaints or petitions raised before the PUC, CEC, and California Supreme Court specifically regarding OGS, and (c) claims Plaintiffs have raised, could have raised, or could raise under the Clean Air Act, Endangered Species Act, National Environmental Policy Act, California Environmental Quality Act, California Health & Safety Code or any other local, state, or federal regulation or law governing the development, construction, ownership, proposed sale, commissioning or initial operation of OGS prior to the close of the sale of OGS to PG&E; provided, however, that nothing herein will affect Plaintiffs' relative rights or obligations in respect of any Claim arising out of, resulting from or based upon a breach of this Consent Decree by Defendants. Except as necessary to enforce this Consent Decree, Plaintiffs agree not to bring suit against OGS or any entity operating OGS for a period of five years following the close of the sale of OGS to PG&E.

b. Notwithstanding the above, Plaintiffs do not waive the right to bring any action concerning OGS after the expiration of more than five (5) years after the close of the sale of OGS to PG&E for claims other than those released above and that may arise following the closing of such sale to the extent such claims are still within the statute of limitations. Plaintiffs further reserve the right to seek intervenor compensation from the PUC for all proceedings, including proceedings involving OGS, notwithstanding the release of such claims contained in this Paragraph.

### VIII. CLAIMS BY THIRD PARTIES RELATED TO USE OF THE FUND

13. Fund Manager shall indemnify, defend and hold harmless Defendants from and against any and all losses arising out of any and all claims brought against them by any third party(ies) that receive funds from the Fund, enter into agreements with Plaintiffs or Fund Manager related to the Fund, or that otherwise benefit from the Fund. Fund Manager shall also indemnify, defend and hold harmless Defendants from and against any and all losses arising out

1   of any and all claims brought against them by any federal, state, or local government agency

2   related to any project or program funded from the Fund.

3                         IX.   **NON-TRANSFERABILITY.**

4          14.    The Plaintiffs hereby represent and warrant that they have not sold, transferred,

5   conveyed, pledged, or otherwise disposed of any of the Claims and that they will not sell,

6   transfer, convey, pledge or otherwise dispose of their interests in this Consent Decree, except as

7   provided in Paragraph 8.  In the event that any of the Plaintiffs sell, transfer, convey, pledge or

8   otherwise dispose of their interests in this Consent Decree, Defendants' obligations under this

9   Consent Decree cease and all funds in the Fund and any unspent funds that have been withdrawn

10  from the Fund by Fund Manager will be returned to CCGS within three (3) calendar days.

11                              X.   **INTEGRATION**

12         15.    This document, including the attached Settlement Agreement, embodies the entire

13  terms and conditions of the Consent Decree described herein, and each Party acknowledges that

14  it has not relied on any warranties, representations or promises (whether oral or written) except

15  as set forth expressly in this Consent Decree.  Moreover, this Consent Decree, including the

16  attached Settlement Agreement, supersedes all prior agreements, understandings, negotiations,

17  and discussions (whether oral or written) among the Parties with respect to settling their

18  respective claims.  No supplement, modification, or waiver of this Consent Decree shall be

19  binding unless executed in writing on behalf of all of the Parties.  No waiver of any of the

20  provisions of this Consent Decree shall be deemed or shall constitute a waiver of any other

21  provision hereof (whether or not similar), nor shall such a waiver constitute a continuing waiver

22  unless otherwise expressly provided.

23                    XI.   **RETENTION OF JURISDICTION**

24         16.    The Court shall retain jurisdiction over this case until termination of this Consent

25  Decree for the purpose of resolving disputes arising under this Decree, entering orders modifying

26  this Decree, or effectuating or enforcing compliance with the terms of this Decree.

27         17.    Any proceeding or action arising out of or relating to this Consent Decree must be

28  brought in the United States District Court for the Northern District of California, and each of the

Consent Decree

9

1  Parties irrevocably submits to the exclusive jurisdiction of this court in any such proceeding or

2  action, waives any objection it may now or hereafter have to venue or to convenience of forum,

3  agrees that all claims in respect of the proceeding or action shall be heard and determined only in

4  any such court, and agrees not to bring any proceeding or action arising out of or relating to this

5  Consent Decree or the transactions contemplated hereby in any other court.  However, if the

6  United States District Court for the Northern District of California does not concur that it has

7  jurisdiction over any such matters, then any such proceeding or action may be brought in any

8  court of competent jurisdiction with geographic jurisdiction including the City of Oakley,

9  California, and each of the Parties waives any objection it may now or hereafter have to venue or

10  to convenience of forum, agrees that all claims in respect of the proceeding or action shall be

11  heard and determined only in any such court, and agrees not to bring any proceeding or action

12  arising out of or relating to this Consent Decree or the transactions contemplated hereby in any

13  other court.  Notwithstanding anything in this Consent Decree to the contrary, in the event an

14  action is commenced in any court for any matter that Plaintiffs released or waived in this

15  Consent Decree, a counterclaim, counter-complaint, cross-claim, cross-complaint, or other court

16  filing may be filed and pursued in that same court to enforce the releases and waivers in this

17  Consent Decree.  Nothing herein contained shall be deemed to affect the right of any Party to

18  serve process in any manner permitted by law or to commence legal proceedings or otherwise

19  proceed against any other Party in any other jurisdiction, in each case, to enforce judgments

20  obtained in any action, suit or proceeding brought pursuant to this paragraph.

21  ### XII.  NOTICES

22  18.    All notices which are given or required to be given pursuant to this Consent

23  Decree shall, except as otherwise provided herein, be mailed postage-paid to the following

24  addresses:

25  (A)    CCGS

P.O Box 1690
26  Danville, CA 94526
Attn:  Bryan J. Bertacchi/James McLucas
27  (B)    Radback

28  P.O. Box 1690

1          Danville, CA 94526
Attn:  Bryan J. Bertacchi/James McLucas

2

3         (C)     <u>CBD</u>

4            Center for Biological Diversity
351 California St, Suite 600

5            San Francisco, CA. 94104
Attn: Jonathan Evans

6

7         (D)     <u>CBE</u>

8            Communities for a Better Environment
1904 Franklin Street, Suite 600

9            Oakland, CA 94612
Attn: Shana Lazerow

10

11         (E)     <u>WEI</u>

12            Wild Equity Institute
474 Valencia Street

13            Suite 295
San Francisco, CA 94103

14            Attn:  Brent Plater

15         (F)     <u>Additional copies for CCGS and/or Radback</u>

16            Latham & Watkins LLP
355 South Grand Avenue

17            Los Angeles, CA 90071
Attn:  Robert A. Wyman/James L. Arnone

18      19.      Any Party may, by written notice to the other Parties, change its designated notice

19 recipient or notice address provided above.

20      20.      Notices submitted pursuant to this Section shall be deemed submitted upon

21 mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

22 in writing.

23 **XIII.  <u>EFFECTIVE DATE</u>**

24      21.      The Effective Date of this Consent Decree shall be the date upon which this

25 Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

26 whichever occurs first, as recorded on the Court's docket.

27 **XIV.  <u>MUTUAL CONSTRUCTION</u>**

28      22.      Each of the Parties acknowledges that the contents of this Consent Decree have

Consent Decree

11

been negotiated by sophisticated parties, explained by duly authorized counsel, and that this Consent Decree is executed voluntarily and with full knowledge of its significance. Each of the Parties participated and cooperated in the drafting and preparation of this Consent Decree. Accordingly, the Parties agree that neither this Consent Decree nor its terms should be construed against any of the Parties by reason of such Party's lack of participation in the drafting or preparation of this Consent Decree.

## XV. ATTORNEYS' FEES

23. CCGS will reimburse Plaintiffs for $100,000 in attorneys' fees arising from and relating to the dispute resolved herein and this Consent Decree. Payment of these fees shall be made within thirty (30) days of the successful closing of financing for OGS construction.

## XVI. DISMISSAL WITH PREJUDICE

24. Following the execution and delivery of this Consent Decree, Plaintiffs shall dismiss with prejudice any and all claims released in Paragraph 12 that may then exist or be pending before any court, administrative agency, or other governmental forum with any jurisdiction over the matters released in Paragraph 12.

## XVII. NO ADMISSION OF LIABILITY

25. The Parties enter into this Consent Decree to avoid the expense and inconvenience of further litigation. Nothing in this Consent Decree shall imply any admission of liability by any Party.

## XVIII. SEVERABILITY

26. It is the belief of the Parties that this Consent Decree does not contain any provision contrary to law. However, if any part of this Consent Decree shall be determined to be illegal, invalid, or unenforceable, that part shall be severed from this Consent Decree and the remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill the original intent of the Parties.

## XIX. FEES AND COSTS

27. Except as provided in Paragraph 23, each Party shall bear its own costs and fees.

Consent Decree

## XX.  NO WAIVER

28.     No delay or omission by either Party hereto to exercise any right or power occurring upon any default by the other Party with respect to any of the terms of this Consent Decree shall impair any such right or power or be construed to be a waiver thereof.  A waiver by any of the Parties hereto of any of the covenants, conditions, or agreements to be performed by the other Parties shall not be construed to be a waiver of any succeeding breach thereof of any covenant, condition, or agreement herein contained.

## XXI.  CESSATION OR SUSPENSION OF PAYMENT OBLIGATIONS.

29.     CCGS' payment obligations under Paragraph 8 of this Consent Decree shall be suspended in the event that OGS does not receive any permit or approval required for OGS's construction, operation, or sale to PG&E, or any required extension(s) thereof, or in the event any such permit, approval, or extension is withheld, revoked, overturned, or withdrawn by any permitting agency, administrative body, or court of law, including but not limited to the PUC, CEC, BAAQMD, U.S. EPA, or any state or federal court of law, but shall resume once OGS returns to operation.  CCGS' payment obligations under Paragraph 8 of this Consent Decree shall also be suspended in the event OGS voluntarily or involuntarily ceases operations or the facility is permanently or temporarily shut down for more than twelve (12) months, but shall resume once OGS returns to operation. CCGS' payment obligation under Paragraph 8 of this Consent Decree shall terminate if Plaintiffs breach any material term of this Consent Decree.

## XXII.  AUTHORITY, SIGNATURES, AND SERVICE

30.     Each Party hereby represents and warrants that: (i) the individual signing this Consent Decree on its behalf is duly authorized to execute this Consent Decree on behalf of such Party; (ii) such Party has the necessary power and authority to enter into this Consent Decree and to carry out its obligations hereunder; and (iii) the execution and delivery of this Consent Decree, the performance by Defendants or the Plaintiffs, as applicable, of its respective obligations hereunder and the consummation by Defendants or the Plaintiffs, as applicable, of this Consent Decree have been duly authorized by the appropriate internal authority in a manner authorized by such Party's internal corporate governance procedures.

31.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Parties agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

### XXIII.  BINDING AGREEMENT

32.     This Consent Decree is binding upon and shall inure to the benefit of any and all partners, successors, assignees, heirs, legatees, devisees, executors, administrators, representatives and personal representatives of each of the Parties hereto.

### XXIV.  MODIFICATION

33.     The terms of this Consent Decree may be modified by the Parties only by a subsequent signed written agreement and upon approval by the Court.

### XXV.  FINAL JUDGMENT

34.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

///

///

///

Consent Decree

1   The UNDERSIGNED PARTIES enter into this Consent Decree and submit it to this Court for

2   approval and entry.

3                               Dated this 22nd day of August, 2013.

4   For COMMUNITIES FOR A BETTER ENVIRONMENT

5                                              Date: 8/22, 2013

6   Name: Nile Malloy
    Title:   Program Director

7

8   For CENTER FOR BIOLOGICAL DIVERSITY

9                                              Date: 8/22, 2013

    Name: Peter Galvin
10  Title:   Director of Programs

11

    For WILD EQUITY INSTITUTE
12

13      Brent Plater                            Date:   8/22   , 2013

    Name: Brent Plater
14  Title:   Executive Director

15

    For RADBACK ENERGY, INC.
16

17                                              Date: 8/21, 2013

    Name: Bryan J. Bertacchi
18  Title:  President

19

    For CONTRA COSTA GENERATING STATION, LLC
20

21                                              Date: 8/21, 2013

    Name: Bryan J. Bertacchi
22  Title:  President

23

24      Dated and entered this 11 day of October, 2013.

25

26          Maria-Elena James
            UNITED STATES DISTRICT JUDGE
27          Northern District of California

28

                                                      Consent Decree

# ATTACHMENT

# SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") by and between Contra Costa Generating Station LLC ("CCGS") and Radback Energy, Inc. ("Radback") (collectively "Defendants"), on the one hand, and Communities for a Better Environment ("CBE"), Center for Biological Diversity ("CBD"), and Wild Equity Institute ("WEI") (collectively "Plaintiffs"), on the other hand, (each a "Party," collectively the "Parties") shall take effect upon execution by the Parties and the satisfaction of the condition precedent provided in Paragraph 8 of the Agreement herein.

## <u>RECITALS</u>

1.      On or about December 16, 2010, the California Public Utilities Commission ("PUC") issued a decision allowing Pacific Gas & Electric Company ("PG&E") to purchase the Oakley Generating Station ("OGS"), a 624-megawatt, state of the art, natural-gas-fired power plant in Oakley, California.

2.      On or about May 18, 2011, the Energy Resources Conservation and Development Commission aka the "California Energy Commission" ("CEC") issued a decision approving the development, construction, and operation of OGS.

3.      On or about June 17, 2011, CBE and Robert Sarvey filed a petition for review of PUC's and CEC's approvals/actions concerning OGS in the California Supreme Court.

4.      On or about June 27, 2011, The Utility Reform Network filed a petition for review of PUC's approvals/actions concerning OGS in the California Court of Appeal, First Appellate District.

5.      On December 16, 2011, Plaintiffs sent a 60-day notice of intent to sue for alleged violations of the Clean Air Act ("CAA") to Pacific Gas and Electric Company ("PG&E"), Radback, and CCGS, pursuant to section 304(a) of the CAA. Plaintiffs alleged that the noticed parties violated the Clean Air Act by failing to obtain a Prevention of Significant Deterioration ("PSD") permit for greenhouse gas emissions from the Oakley Generating Station.

6.      On December 19, 2011, Plaintiffs sent the United States Environmental Protection Agency ("U.S. EPA"), U.S. Department of Interior ("U.S. DOI"), CEC, GenOn Energy, PG&E, Radback, and CCGS, a 60-day notice of intent to sue for alleged violations of Sections 7(a)(1), 7(a)(2), 7(d), and 9 of the Endangered Species Act ("ESA"). Plaintiffs alleged that the operation of the OGS would result in nitrogen deposition in the Antioch Dunes National Wildlife Refuge ("Antioch Refuge") and result in the take of and otherwise jeopardize the continued existence of endangered species including the Lange's Metalmark Butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose.

7.      On or about March 16, 2012, the California Court of Appeal, First Appellate District, issued an opinion reversing PUC's decision allowing PG&E to purchase OGS, and remanding the matter back to PUC for further proceedings.

8.      On or about March 30, 2012, PG&E filed a new application to purchase OGS with PUC.

9.      On or about September 12, 2012, the California Supreme Court denied CBE's and Robert Sarvey's petition for review of PUC's and CEC's approvals/actions concerning OGS.

10.     On or about December 28, 2012, PUC approved PG&E's new application to purchase OGS.

11.     On or about January 28, 2013, CBE petitioned PUC for rehearing of PUC's decision to approve PG&E's new application to purchase OGS.  Others also similarly petitioned PUC for rehearing of that decision.

12.     On or about April 18, 2013, PUC denied the rehearing petitions filed by CBE and others.

13.     Defendants deny all allegations raised in the 60-day notice letters and in the petitions, complaints, and other filings against OGS that have been raised before the PUC, CEC, and California Supreme Court, and deny any liability with respect to any claims or assertions raised by Plaintiffs relating to the development, construction, ownership, proposed sale, commissioning or initial operation of the OGS.

14.     The Parties have reached a final settlement intended to resolve all claims that now exist or hereafter may arise relating to the development, construction, preconstruction permitting (and any extension of the preconstruction licenses and permits), proposed sale, commissioning and initial operation of the OGS prior to the close of the sale of OGS to PG&E under any laws and/or regulations whatsoever, whether subject to the jurisdiction of the U.S. EPA, PUC, CEC, Bay Area Air Quality Management District ("BAAQMD"), or any other federal, state, local or regional permitting or regulatory agency.  Plaintiffs reserve the right to challenge the operation of OGS following the close of the sale of OGS to PG&E, after a reasonable period of time as defined in Paragraph 6 of the Agreement below, for claims that have not yet arisen, to the extent such claims are still actionable under this Agreement.

## AGREEMENT

**NOW, THEREFORE**, based on the above Recitals and in consideration of the mutual promises and covenants, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Conservation and Mitigation Fund Payment. CCGS shall, subject to the qualifications below, within thirty (30) calendar days of the successful closing of financing for OGS construction, establish a Conservation and Mitigation Fund ("Fund") and shall make an initial payment of Fifty Thousand Dollars ($50,000) into the Fund.  CCGS shall notify the Plaintiffs of the successful close of such financing by providing the Plaintiffs with email or other written notification within forty-eight (48) hours of issuing the Notice to Proceed to the main OGS contractor.  Thereafter, for the next five (5) quarters (i.e., every 90 days thereafter for five more quarters), subject to the qualifications below, CCGS shall make an additional payment of Fifty Thousand Dollars ($50,000) into the Fund such that total deposits to the Fund by the end of the sixth quarter shall be Three Hundred Thousand Dollars ($300,000).  CCGS, or, unless adequate collateral reasonably acceptable to Plaintiffs is set aside in escrow prior to the close of any sale of OGS, any successor in interest to this agreement and/or in the ownership and/or

operation of the OGS, shall, within thirty (30) calendar days of the closing of a sale of the OGS or of its commercial electric power output to PG&E and for each year thereafter for a total of ten (10) years, subject to the qualifications below, deposit into the Fund payments in the amount of One Hundred Seventy Thousand Dollars ($170,000) such that total deposits into the Fund, including the six (6) quarterly payments and the ten (10) annual payments, shall equal Two Million Dollars ($2,000,000). CCGS shall provide notice to the Plaintiffs of the closing of the sale to PG&E or of its commercial power output. The quarterly and annual payments to the Fund shall be made as long as OGS continues to operate (once it commences operation) until the end of the ten-year period, Plaintiffs remain in compliance with the terms of this Agreement, and this Agreement remains in effect. Except as provided in Paragraph 16 (attorneys' fees), these payments shall be the total OGS-related payments by all Defendants under the Agreement. The Fund shall be administered by the Conservation and Mitigation Fund Manager ("Fund Manager") who shall have access to the Fund and make use of its funds as Plaintiffs see fit provided Plaintiffs remain in compliance with this Agreement, this Agreement remains in effect, and Plaintiffs use the funds pursuant to Paragraph 2 of this Agreement. The Parties agree that the Rose Foundation is an acceptable Fund Manager for purposes of this Agreement. In the event the Rose Foundation is unable to manage the funds the Plaintiffs shall select another Fund Manager, subject to Defendants' approval which shall not be unreasonably withheld. The Plaintiffs may delegate the reporting, administration, and auditing requirements for the Fund, Conservation Agreement, and Conservation Program to the Fund Manager.

2. Defendants believe that the operation of OGS will not cause any of the environmental, species, or community health impacts alleged by the Plaintiffs. However, in the interest of resolving all potential claims, Defendants agree to the use of the Fund as provided in this Paragraph. Plaintiffs agree to use all sums in the Fund for approved species and habitat restoration or maintenance activities that will benefit conservation of the Lange's Metalmark Butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose, and for community public health, energy efficiency projects, or environmental education efforts. The Plaintiffs or Fund Manager shall allocate approximately half of the sums in the Fund for approved species and habitat restoration or maintenance activities that will benefit conservation of the Lange's Metalmark Butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose, as defined in Subparagraph A; and approximately half of the sums for community public health, energy efficiency projects, or environmental education efforts, as defined in Subparagraph B.

A. The provisions of this subparagraph shall constitute the Oakley Generating Station Conservation Agreement for Endangered Species Mitigation and Habitat Restoration ("Conservation Agreement"). Activities undertaken pursuant to these provisions shall be referred to as Conservation Program activities. Approved species and habitat restoration or maintenance activities include:

(i) Captive breeding of the Lange's Metalmark Butterfly;

(ii) Planting of the Naked stem buckwheat, Contra Costa wallflower, or Antioch Dunes evening primrose in the Antioch Refuge;

3

(iii)  Sponsorship of a qualified individual or individuals to study or engage in conservation efforts for the Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose;

(iv)  Creation of additional habitat for the Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose including the purchase and transport of sand or other fill material and grading work in the Antioch Refuge;

(v)  Maintenance and/or restoration of Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose habitat through invasive weed clearance and control, or other invasive weed maintenance, or invasive species removal activities in the Antioch Refuge; and/or

(vi)  Sponsorship of community education or interpretive outreach relating to preservation of the Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose.

B.      Approved community projects and outreach efforts include:

(i)  Community public health funding including funds for health services and health education at the La Raza Clinic in Oakley, California;

(ii)  Installation of air filters at local schools;

(iii)  Installation of energy efficient lighting, heating, and windows at local schools; and/or

(iv)  Environmental education and stewardship programs.

C.      Notwithstanding the above language in Paragraph 2, Thirty Thousand Dollars ($30,000) of the initial payment of Fifty Thousand Dollars ($50,000) shall be used for a Lange's metalmark butterfly captive breeding project selected by the United States Fish and Wildlife Service.  The United States Fish and Wildlife Service shall provide the Fund Manager with written notice regarding when, and to whom, the funds should be released for this project.

3.      Facility Operating Commitments.  CCGS agrees to operate OGS as designed and to use good operating practices to maintain the energy efficiency of the facility.

4.      Reporting.  Plaintiffs and/or Fund Manager shall account for all funds removed from the Fund and expended pursuant to Paragraph 2 and maintain accounting records that include the amounts withdrawn and spent from the Fund, projects or programs funded, activities performed, and the dates of performance.  Plaintiffs and/or Fund Manager shall submit an annual report to CCGS that includes a summary of all amounts withdrawn and spent from the Fund, projects or programs funded, activities performed with the funds, and the dates of performance.  Any costs related to the selection of and administration by the Fund Manager may, if reasonable, be withdrawn from the Fund but shall not otherwise be charged to Defendants.

4

5.     Audits.  CCGS reserves the right to hire a neutral third party to audit Plaintiffs' and/or Fund Manager's expenditures from the Fund.  CCGS and Plaintiffs shall agree on the neutral third party auditor in consultation with the Fund Manager.  Consent for a third party auditor will not be unreasonably withheld by the Plaintiffs.  Defendants agree to fund any neutral third party audit that occurs.  In the event the auditor determines that funds were not spent pursuant to the terms of this Agreement, CCGS may seek recovery of misspent funds from the entity the auditor determined misspent those funds and withhold payment of additional funds into the Fund until the issues outlined in the audit are addressed to the satisfaction of the neutral third party auditor.

6.     Release and Covenant Not to Sue by Plaintiffs.

(a)     Plaintiffs hereby forever release and discharge Defendants, PG&E, any and all governmental bodies with jurisdiction related to OGS, and their respective past and present officers, directors, partners, shareholders, members, joint venturers, agents, employees, representatives, predecessors, successors, parents, subsidiaries, affiliates and/or assigns ("Released Parties"), from any and all manner of actions, claims, causes of action, losses, suits, debts, accounts, covenants, contracts, agreements, demands, obligations, direct, incidental, consequential or punitive damages, liens, costs, expenses, fees and liabilities, in law or in equity, whether administrative or judicial, whether subject to the jurisdiction of the U.S. EPA, PUC, CEC, BAAQMD or any other federal, state, local or regional permitting agency, in each case of any nature whatsoever, whether asserted or otherwise, known or unknown, fixed or contingent, matured or unmatured (collectively, a "Claim" or "Claims"), which all or any of the Plaintiffs ever had or now have or may hereafter have against the Released Parties or any of them to the extent arising out of, resulting from or based in any way upon, (a) the development, construction, ownership, proposed sale, commissioning or initial operation of OGS prior to the close of the sale of OGS to PG&E; (b) any issue raised in the 60-day notice letters specifically regarding OGS, complaints or petitions raised before the PUC, CEC, and California Supreme Court specifically regarding OGS, and (c) claims Plaintiffs have raised, could have raised, or could raise under the Clean Air Act, Endangered Species Act, National Environmental Policy Act, California Environmental Quality Act, California Health & Safety Code or any other local, state, or federal regulation or law governing the development, construction, ownership, proposed sale, commissioning or initial operation of OGS prior to the close of the sale of OGS to PG&E; provided, however, that nothing herein will affect Plaintiffs' relative rights or obligations in respect of any Claim arising out of, resulting from or based upon a breach of this Agreement by Defendants.  Except as necessary to enforce this Agreement, Plaintiffs agree not to bring suit against OGS or any entity operating OGS for a period of five years following the close of the sale of OGS to PG&E.

(b)     Notwithstanding the above, Plaintiffs do not waive the right to bring any action concerning OGS after the expiration of more than five (5) years after the close of the sale of OGS to PG&E for claims other than those released above and that may arise following the closing of such sale to the extent such claims are still within the statute of limitations.  Plaintiffs further reserve the right to seek intervenor compensation from the PUC for all proceedings, including proceedings involving OGS, notwithstanding the release of such claims contained in this Paragraph.

5

7.      Claims by Third Parties Related to Use of the Fund. Fund Manager shall indemnify, defend and hold harmless Defendants from and against any and all losses arising out of any and all claims brought against them by any third party(ies) that receive funds from the Fund, enter into agreements with Plaintiffs or Fund Manager related to the Fund, or that otherwise benefit from the Fund. Fund Manager shall also indemnify, defend and hold harmless Defendants from and against any and all losses arising out of any and all claims brought against them by any federal, state, or local government agency related to any project or program funded from the Fund.

8.      Consent Decree and Letter from Fish and Wildlife Service. The Parties shall make their best efforts to obtain the agreement of the U.S. EPA to participate as a party in the lodging of a consent decree to be issued by the United States District Court for the Northern District of California pursuant to Section 113 of the CAA ("Consent Decree"), to address the federal Clean Air Act claims released in Paragraph 6 of this Agreement and otherwise to make enforceable by such court the provisions of this Agreement. The content of the decree shall be substantially in the form attached as Exhibit A hereto. The Parties agree that discussions with the U.S. EPA regarding the joint lodging of a decree is of the highest priority and agree to use their best efforts to lodge the decree as soon as possible with a target lodging date of not later than June 30, 2013. The Parties further agree that receipt of a letter from the United States Fish and Wildlife Service ("Service") in the form attached as Exhibit B is a condition precedent to this Agreement.

9.      Non-Transferability. The Plaintiffs hereby represent and warrant that they have not sold, transferred, conveyed, pledged, or otherwise disposed of any of the Claims and that they will not sell, transfer, convey, pledge or otherwise dispose of their interests in this Agreement, except as provided in Paragraph 1 of the Agreement. In the event that any of the Plaintiffs sell, transfer, convey, pledge or otherwise dispose of their interests in this Agreement, Defendants' obligations under the Agreement cease and all funds in the Fund and any unspent funds that have been withdrawn from the Fund by Fund Manager will be returned to CCGS within three (3) calendar days.

10.      Integration. This document embodies the entire terms and conditions of the Agreement described herein, and each Party acknowledges that it has not relied on any warranties, representations or promises (whether oral or written) except as set forth expressly in this Agreement. Moreover, this Agreement supersedes all prior agreements, understandings, negotiations, and discussions (whether oral or written) among the Parties with respect to settling their respective claims. No supplement, modification, or waiver of this Agreement shall be binding unless executed in writing on behalf of all of the Parties. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such a waiver constitute a continuing waiver unless otherwise expressly provided.

11.      Jurisdiction. Any proceeding or action arising out of or relating to this Agreement must be brought in the United States District Court for the Northern District of California, and each of the Parties irrevocably submits to the exclusive jurisdiction of this court in any such proceeding or action, waives any objection it may now or hereafter have to venue

6

or to convenience of forum, agrees that all claims in respect of the proceeding or action shall be heard and determined only in any such court, and agrees not to bring any proceeding or action arising out of or relating to this Agreement or the transactions contemplated hereby in any other court.  However, if the United States District Court for the Northern District of California does not concur that it has jurisdiction over such matters, then any such proceeding or action may be brought in any court of competent jurisdiction with geographic jurisdiction including the City of Oakley, California, and each of the Parties waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding or action shall be heard and determined only in any such court, and agrees not to bring any proceeding or action arising out of or relating to this Agreement or the transactions contemplated hereby in any other court.  Notwithstanding anything in this Agreement to the contrary, in the event an action is commenced in any court for any matter that Plaintiffs released or waived in this Agreement, a counter-complaint, cross-complaint, or other court filing may be filed and pursued in that same court to enforce the releases and waivers in this Agreement.  Nothing herein contained shall be deemed to affect the right of any Party to serve process in any manner permitted by law or to commence legal proceedings or otherwise proceed against any other Party in any other jurisdiction, in each case, to enforce judgments obtained in any action, suit or proceeding brought pursuant to this paragraph.

     12.    <u>Confidentiality</u>.  Each Party agrees that this Agreement, its contents, the discussions and negotiations relating thereto and all communications or documents relating to the same (the "Confidential Information") constitute information that is confidential to the Parties until the Consent Decree is lodged or until June 30, 2013, whichever comes first.  Accordingly, no Party shall use or disclose to anyone any Confidential Information, except to the extent required by applicable law or regulation, pursuant to an order or subpoena of a court of competent jurisdiction, or as necessary for the conduct of business, such as disclosure to auditors; provided, however, that representatives of PG&E, of the Fish and Wildlife Service, of the Environmental Protection Agency, and of investors or potential investors in OGS may review the Agreement and Consent Decree, and further provided that no Party will be obligated under this paragraph with respect to Confidential Information that is or becomes generally available to the public other than as a result of a disclosure by or on behalf of such Party in violation of this Agreement.

     13.    <u>Notices</u>.  All notices which are given or required to be given pursuant to this Agreement shall be mailed postage-paid to the following addresses:

     (A)    <u>CCGS</u>

     P.O Box 1690
     Danville, CA 94526
     Attn:  Bryan J. Bertacchi/James McLucas

     (B)    <u>Radback</u>

     P.O. Box 1690
     Danville, CA 94526

        Attn:  Bryan J. Bertacchi/James McLucas

(C)    <u>CBD</u>

        Center for Biological Diversity
        351 California St, Suite 600
        San Francisco, CA. 94104
        Attn: Jonathan Evans

(D)    <u>CBE</u>

        Communities for a Better Environment
        1904 Franklin Street, Suite 600
        Oakland, CA 94612
        Attn: Shana Lazerow

(E)    <u>WEI</u>

        Wild Equity Institute
        474 Valencia Street
        Suite 295
        San Francisco, CA 94103
        Attn: Brent Plater

(F)    <u>Additional copies for CCGS and/or Radback</u>

        Latham & Watkins LLP
        355 South Grand Avenue
        Los Angeles, CA 90071
        Attn: Robert A. Wyman/James L. Arnone

       14.    <u>Valid Upon Signature.</u>  This Agreement is not valid until each of the Parties has signed below and the condition precedent in Paragraph 8 has been satisfied.  This Agreement may be executed in separate counterparts, including by facsimile, telecopy or email ".pdf" format with each signed counterpart constituting an original signed Agreement, equally admissible in evidence.

       15.    <u>Mutual Construction.</u>  Each of the Parties acknowledges that the contents of this Agreement have been negotiated by sophisticated parties, explained by duly authorized counsel, and that this Agreement is executed voluntarily and with full knowledge of its significance.  Each of the Parties participated and cooperated in the drafting and preparation of this Agreement.  Accordingly, the Parties agree that neither this Agreement nor its terms should be construed against any of the Parties by reason of such Party's lack of participation in the drafting or preparation of this Agreement.

       16.    <u>Attorneys' Fees.</u>  CCGS will reimburse Plaintiffs for $100,000 in attorneys' fees

8

arising from and relating to the dispute resolved herein and this Agreement. Payment of these fees shall be made within thirty (30) days of the successful closing of financing for OGS construction.

17.    Dismissal with Prejudice. Following the execution and delivery of this Agreement and the satisfaction of the condition precedent of Paragraph 8, Plaintiffs shall dismiss with prejudice any and all claims released in Paragraph 6 that may then exist or be pending before any court, administrative agency, or other governmental forum with any jurisdiction over the matters released in Paragraph 6.

18.    No Admission of Liability. The Parties enter into the Agreement to avoid the expense and inconvenience of litigation. Nothing in this Agreement shall imply any admission of liability by any Party.

19.    Severability. It is the belief of the Parties that this Agreement does not contain any provision contrary to law. However, if any part of this Agreement shall be determined to be illegal, invalid, or unenforceable, that part shall be severed from the Agreement and the remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill the original intent of the Parties.

20.    Fees and Costs. Except as provided in Paragraph 16, each Party shall bear its own costs and fees.

21.    No Waiver. No delay or omission by either Party hereto to exercise any right or power occurring upon any default by the other Party with respect to any of the terms of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by any of the Parties hereto of any of the covenants, conditions, or agreements to be performed by the other Parties shall not be construed to be a waiver of any succeeding breach thereof of any covenant, condition, or agreement herein contained.

22.    Cessation or Suspension of Payment Obligations. CCGS' payment obligations under Paragraph 1 of this Agreement shall be suspended in the event that OGS does not receive any permit or approval required for OGS's construction, operation, or sale to PG&E, or any required extension(s) thereof, or in the event any such permit, approval, or extension is withheld, revoked, overturned, or withdrawn by any permitting agency, administrative body, or court of law, including but not limited to the PUC, CEC, BAAQMD, U.S. EPA, or any state or federal court of law, but shall resume once OGS returns to operation. CCGS' payment obligations under Paragraph 1 of this Agreement shall also be suspended in the event OGS voluntarily or involuntarily ceases operations or the facility is permanently or temporarily shut down for more than twelve (12) months, but shall resume once OGS returns to operation. CCGS' payment obligation under Paragraph 1 of this Agreement shall terminate if Plaintiffs breach any material term of this Agreement.

23.    Authority. Each Party hereby represents and warrants that: (i) the individual signing this Agreement on its behalf is duly authorized to execute this Agreement on behalf of such Party; (ii) such Party has the necessary power and authority to enter into this Agreement and to carry out its obligations hereunder; and (iii) the execution and delivery of this

Agreement, the performance by Defendants or the Plaintiffs, as applicable, of its respective obligations hereunder and the consummation by Defendants or the Plaintiffs, as applicable, of this Agreement have been duly authorized by the appropriate internal authority in a manner authorized by such Party's internal corporate governance procedures.

      24.   <u>Binding Agreement</u>.  This Agreement is binding upon and shall inure to the benefit of any and all partners, successors, assigns, heirs, legatees, devisees, executors, administrators, representatives and personal representatives of each of the Parties hereto.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed on the date first written above.

By: _____
Contra Costa Generating Station LLC
Name: Bryan J. Bertacchi
Title: President

By: _____
Radback Energy, Inc.
Name: Bryan J. Bertacchi
Title: President

By: _____
Center for Biological Diversity
Name: Peter Galvin
Title: Conservation Director

By: _____
Wild Equity Institute
Name: Brent Plater
Title: Executive Director

By: _____
Communities for a Better Environment
Name: NILE MALLOY
Title: PROGRAM DIRECTOR

11

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, COMMUNITIES FOR A BETTER ENVIRONMENT, CENTER FOR BIOLOGICAL DIVERSITY, and WILD EQUITY INSTITUTE, | Civil No. |
| Plaintiffs, | CONSENT DECREE |
| v. | |
| CONTRA COSTA GENERATING STATION, LLC and RADBACK ENERGY, INC. | |
| Defendants. | |

## Table of Contents

I. JURISDICTION AND VENUE ................................................................................. 2

II. APPLICABILITY ................................................................................................... 2

III. DEFINITIONS...................................................................................................... 3

IV. CONSERVATION AND MITIGATION FUND.................................................... 4

V. REPORTING ......................................................................................................... 7

VI. AUDITS................................................................................................................ 7

VII. RELEASE AND COVENANT NOT TO SUE BY PLAINTIFFS ....................... 8

VIII. CLAIMS BY THIRD PARTIES RELATED TO USE OF THE FUND.............. 9

IX. NON-TRANSFERABILITY.................................................................................. 9

X. INTEGRATION..................................................................................................... 9

XI. RETENTION OF JURISDICTION..................................................................... 10

XII. NOTICES .......................................................................................................... 11

XIII. EFFECTIVE DATE .......................................................................................... 12

XIV. MUTUAL CONSTRUCTION .......................................................................... 12

XV. ATTORNEYS' FEES ......................................................................................... 12

XVI. DISMISSAL WITH PREJUDICE..................................................................... 12

XVII. NO ADMISSION OF LIABILITY .................................................................. 13

XVIII. SEVERABILITY ............................................................................................ 13

XIX. FEES AND COSTS .......................................................................................... 13

XX. NO WAIVER ..................................................................................................... 13

XXI. CESSATION OR SUSPENSION OF PAYMENT OBLIGATIONS. ................ 13

XXII. AUTHORITY, SIGNATURES, AND SERVICE............................................. 14

XXIII. BINDING AGREEMENT .............................................................................. 14

XXIV. MODIFICATION ........................................................................................... 14

XXV. FINAL JUDGMENT........................................................................................ 14

i

1    WHEREAS, concurrently with the lodging of this Consent Decree, plaintiffs

2   Communities for a Better Environment ("CBE"), Center for Biological Diversity ("CBD"), and

3   Wild Equity Institute ("WEI") (collectively, the "Plaintiffs") file a Complaint against Contra

4   Costa Generating Station, LLC ("CCGS") and Radback Energy, Inc. ("Radback") (collectively,

5   "Defendants") pursuant to Section 304 of the Clean Air Act ("CAA," or "the Act"), 42 U.S.C. §

6   7604; alleging that Defendants violated the Act by failing to apply for and receive a CAA

7   Prevention of Significant Deterioration ("PSD") permit for greenhouse gas ("GHG") emissions

8   from the Oakley Generating Station ("OGS"), formerly Contra Costa Generating Station, in

9   violation of 42 U.S.C § 7475 and 40 C.F.R. § 52.21; and that OGS emissions will adversely

10   impact the Lange's Metalmark Butterfly, Contra Costa wallflower and Antioch Dunes evening

11   primrose.

12    WHEREAS, the Complaint seeks declaratory and injunctive relief;

13    WHEREAS, the United States of America, on behalf of the Administrator of the United

14   States Environmental Protection Agency ("U.S. EPA"), believes the public interests of

15   environmental protection and the efficient and timely permitting of stationary sources warrant its

16   participation as a plaintiff in this Consent Decree in light of the transitional nature of U.S. EPA's

17   Tailoring Rule ("Prevention of Significant Deterioration and Title V Greenhouse Gas Tailoring

18   Rule; Final Rule," 75 FR 31,514 (June 3, 2010)), the lack of applicable U.S. EPA guidance on

19   certain interpretive questions regarding federal and state permitting of minor GHG sources, and

20   the agreement among the multiple parties to this Consent Decree, even though considering the

21   specific circumstances of the OGS project, the activities already undertaken by the OGS project

22   to date and anticipated to be taken prior to the close of the OGS sale to PG&E, OGS is

23   considered to be compliant with the applicable provisions of the Clean Air Act.

24    WHEREAS, Defendants deny all allegations in the Complaint and do not admit liability

25   with respect to any claims or assertions in the Complaint;

26    WHEREAS, Plaintiffs and Defendants (collectively, the "Parties") agree, and the Court

27   by entering this Consent Decree finds, that the settlement of this action through this Consent

28   Decree without further litigation is in the public interest, and is a fair, reasonable, and

1    appropriate means of resolving all claims in the Complaint that have been alleged through the

2    date of the lodging of this Decree;

3         WHEREAS, Plaintiffs and Defendants consent to the entry of the Decree without further

4    trial or appeal;

5         NOW, THEREFORE, before the taking of any testimony, without the adjudication or

6    admission of any issue of fact or law except as provided in Section I of this Consent Decree

7    (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED,

8    ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

10        1.    The Court has jurisdiction over the Parties to and the subject matter of this action

11   under Section 304 of the Act, 42 U.S.C. § 7604, the citizen suit provision of the Act, and under

12   28 U.S.C. § 1331.

13        2.    Venue is proper in this District under Section 304(c) of the Act, 42 U.S.C. §

14   7604(c) and under 28 U.S.C. § 1391 because the actions alleged as violations in the Complaint

15   occurred and are occurring in Contra Costa County, California, the location in this District where

16   the OGS is being constructed.  For purposes of this Decree, or any action to enforce this Decree,

17   Plaintiffs and Defendants consent to the Court's jurisdiction over this Decree and any such

18   action, and Plaintiffs and Defendants consent to venue in this judicial district.

19        3.    For purposes of this Consent Decree only, Defendants agree that the Complaint

20   states claims upon which relief may be granted pursuant to Section 304 of the Act.

## II. APPLICABILITY

22        4.    The obligations of this Consent Decree shall apply to and be binding upon the

23   Parties, as well as the Parties' officers, employees, agents, successors, and assignees, and any

24   persons otherwise bound by law.

25        5.    Parties shall provide a copy of this Consent Decree to all officers, employees, and

26   agents whose duties might reasonably include compliance with any provision of this Decree.  In

27   any action to enforce this Consent Decree, no Party shall raise as a defense the failure by any of

28   its officers, directors, employees, agents, or contractors to take any actions necessary to comply

1    with the provisions of this Consent Decree.

2         6.    Nothing in this Decree shall be interpreted as requiring Defendants to continue

3    construction or to engage in operation of the OGS as a power plant.

### III. DEFINITIONS

5         7.    Terms used in this Consent Decree that are defined in the Act or in regulations

6    promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such

7    regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are

8    used in this Consent Decree, the following definitions shall apply:

9              a.    "BAAQMD" shall mean the Bay Area Air Quality Management District;

10             b.    "CEC" shall mean the California Energy Commission;

11             c.    "Complaint" shall mean the complaint filed by the Plaintiffs in this action;

12             d.    "Consent Decree" or "Decree" shall mean this Decree;

13             e.    "Conservation Agreement" shall mean the Oakley Generating Station

14   Conservation Agreement for Endangered Species Mitigation and Habitat Restoration described

15   in Paragraph 9 of this Consent Decree;

16             f.    "Conservation Program" shall mean the Conservation Program described

17   in Paragraph 9 of this Consent Decree;

18             g.    "Date of Lodging" shall mean the date the Consent Decree is filed for

19   lodging with the Clerk of Court for the United States District Court for the Northern District of

20   California;

21             h.    "Day" shall mean a calendar day unless expressly stated to be a business

22   day.  In computing any period of time under this Consent Decree, where the last day would fall

23   on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the

24   next business day;

25             i.    "Defendants" shall mean Contra Costa Generating Station, LLC. and

26   Radback Energy, Inc.

27             j.    "Effective Date" shall have the definition provided in Paragraph 22 of this

28   Consent Decree;

1     k.  "Fund" shall mean the Conservation and Mitigation Fund described in

2 Paragraph 8 of this Consent Decree;

3     l.  "Fund Manager" shall mean the Conservation and Mitigation Fund

4 Manager described in Paragraph 8 of this Consent Decree;

5     m.  "OGS" shall mean the Oakley Generating Station in Contra Costa County,

6 California;

7     n.  "Paragraph" shall mean a portion of this Decree identified by an arabic

8 numeral;

9     o.  "Parties" shall mean the Plaintiffs and Defendants;

10     p.  "PG&E" shall mean Pacific Gas & Electric Company;

11     q.  "Plaintiffs" shall mean Communities for a Better Environment, Center for

12 Biological Diversity, and Wild Equity Institute;

13     r.  "PUC" shall mean the California Public Utilities Commission;

14     s.  "Section" shall mean a portion of this Decree identified by a roman

15 numeral;

16     t.  "Subparagraph" shall mean a subsection of a portion of this Decree

17 identified by a letter; and,

18     u.  "U.S. EPA" shall mean the United States Environmental Protection

19 Agency and any of its successor departments or agencies.

20      **IV.  CONSERVATION AND MITIGATION FUND**

21   8.  CCGS shall, subject to the qualifications below, within thirty (30) calendar days

22 of the successful closing of financing for OGS construction, establish a Conservation and

23 Mitigation Fund ("Fund") and shall make an initial payment of Fifty Thousand Dollars ($50,000)

24 into the Fund.  CCGS shall notify the Plaintiffs of the successful close of such financing by

25 providing the Plaintiffs with email or other written notification within forty-eight (48) hours of

26 issuing the Notice to Proceed to the main OGS contractor.  Thereafter, for the next five (5)

27 quarters (i.e., every 90 days thereafter for five more quarters), subject to the qualifications below,

28 CCGS shall make an additional payment of Fifty Thousand Dollars ($50,000) into the Fund such

1   that total deposits to the Fund by the end of the sixth quarter shall be Three Hundred Thousand

2   Dollars ($300,000).  CCGS, or, unless adequate collateral reasonably acceptable to Plaintiffs is

3   set aside in escrow prior to the close of any sale of the OGS, any successor in interest to this

4   Consent Decree and/or in the ownership and/or operation of the OGS, shall, within thirty (30)

5   calendar days of the closing of a sale of the OGS or of its commercial electric power output to

6   Pacific Gas & Electric Company ("PG&E") and for each year thereafter for a total of ten (10)

7   years, subject to the qualifications below, deposit into the Fund payments in the amount of One

8   Hundred Seventy Thousand Dollars ($170,000) such that total deposits into the Fund, including

9   the six (6) quarterly payments and the ten (10) annual payments, shall equal Two Million Dollars

10   ($2,000,000).  CCGS shall provide notice to the Plaintiffs of the closing of the sale to PG&E or

11   of its commercial power output.  The quarterly and annual payments to the Fund shall be made

12   as long as OGS continues to operate (once it commences operation) until the end of the ten-year

13   period, Plaintiffs remain in compliance with the terms of this Consent Decree, and this Consent

14   Decree remains in effect.  Except as provided in Paragraph 23 (attorneys' fees), these payments

15   shall be the total OGS-related payments by all Defendants under this Consent Decree.  The Fund

16   shall be administered by the Conservation and Mitigation Fund Manager ("Fund Manager") who

17   shall have access to the Fund and make use of its funds as Plaintiffs see fit provided Plaintiffs

18   remain in compliance with this Consent Decree, this Consent Decree remains in effect, and

19   Plaintiffs use the funds pursuant to Paragraph 9 of this Consent Decree.  The Parties agree that

20   the Rose Foundation is an acceptable Fund Manager for purposes of this Agreement.  In the

21   event the Rose Foundation is unable to manage the funds the Plaintiffs shall select another Fund

22   Manager, subject to Defendants' approval which shall not be unreasonably withheld.  The

23   Plaintiffs may delegate the reporting, administration, and auditing requirements for the Fund,

24   Conservation Agreement, and Conservation Program to the Fund Manager.

25       9.      Defendants believe that the operation of OGS will not cause any of the

26   environmental, species, or community health impacts alleged by the Plaintiffs.  However, in the

27   interest of resolving all potential claims, Defendants agree to the use of the Fund as provided in

28   this Paragraph.  Plaintiffs agree to use all sums in the Fund for approved species and habitat

1    restoration or maintenance activities that will benefit conservation of the Lange's Metalmark

2    Butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose, and for community

3    public health, energy efficiency projects, or environmental education efforts. The Plaintiffs or

4    Fund Manager shall allocate approximately half of the sums in the Fund for approved species

5    and habitat restoration or maintenance activities that will benefit conservation of the Lange's

6    Metalmark Butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose, as defined

7    in Subparagraph 9(a); and approximately half of the sums for community public health, energy

8    efficiency projects, or environmental education efforts, as defined in Subparagraph 9(b).

9             a.      The provisions of this subparagraph shall constitute the Oakley Generating

10   Station Conservation Agreement for Endangered Species Mitigation and Habitat Restoration

11   ("Conservation Agreement"). Activities undertaken pursuant to these provisions shall be

12   referred to as Conservation Program activities. Approved species and habitat restoration or

13   maintenance activities include:

14                     (i)      Captive breeding of the Lange's Metalmark Butterfly;

15                     (ii)     Planting of the Naked stem buckwheat, Contra Costa wallflower,
     or Antioch Dunes evening primrose in the Antioch Refuge;
16

17                     (iii)    Sponsorship of a qualified individual or individuals to study or
     engage in conservation efforts for the Lange's Metalmark Butterfly, Contra Costa wallflower, or
18   Antioch Dunes evening primrose;

19                     (iv)     Creation of additional habitat for the Lange's Metalmark Butterfly,
     Contra Costa wallflower, or Antioch Dunes evening primrose including the purchase and
20   transport of sand or other fill material and grading work in the Antioch Refuge;

21                     (v)      Maintenance and/or restoration of Lange's Metalmark Butterfly,
     Contra Costa wallflower, or Antioch Dunes evening primrose habitat through invasive weed
22   clearance and control, or other invasive weed maintenance, or invasive species removal activities
     in the Antioch Refuge; and/or

23                     (vi)     Sponsorship of community education or interpretive outreach
     relating to preservation of the Lange's Metalmark Butterfly, Contra Costa wallflower, or Antioch
24   Dunes evening primrose.

25             b.      Approved community projects and outreach efforts include:

26                     (i)      Community public health funding including funds for health
     services and health education at the La Raza Clinic in Oakley, California;
27

28                     (ii)     Installation of air filters at local schools;

(iii)    Installation of energy efficient lighting, heating, and windows at local schools; and/or

(iv)    Environmental education and stewardship programs.

c.    Notwithstanding the above language in Paragraph 9, Thirty Thousand Dollars ($30,000) of the initial payment of Fifty Thousand Dollars ($50,000) shall be used for a Lange's metalmark butterfly captive breeding project selected by the United States Fish and Wildlife Service.  The United States Fish and Wildlife Service shall provide the Fund Manager with written notice regarding when, and to whom, the funds should be released for this project.

## V. **REPORTING**

10.    Plaintiffs and/or Fund Manager shall account for all funds removed from the Fund and expended pursuant to Paragraph 9 and maintain accounting records that include the amounts withdrawn and spent from the Fund, projects or programs funded, activities performed, and the dates of performance.  Plaintiffs and/or Fund Manager shall submit an annual report to CCGS that includes a summary of all amounts withdrawn and spent from the Fund, projects or programs funded, activities performed with the funds, and the dates of performance.  Any costs related to the selection of and administration by the Fund Manager may, if reasonable, be withdrawn from the Fund but shall not otherwise be charged to Defendants.

## VI. **AUDITS**

11.    CCGS reserves the right to hire a neutral third party to audit Plaintiffs' and/or Fund Manager's expenditures from the Fund.  CCGS and Plaintiffs shall agree on the neutral third party auditor in consultation with the Fund Manager.  Consent for a third party auditor will not be unreasonably withheld by the Plaintiffs.  Defendants agree to fund any neutral third party audit that occurs.  In the event the auditor determines that funds were not spent pursuant to the terms of this Consent Decree, CCGS may seek recovery of misspent funds from the entity the auditor determined misspent those funds and withhold payment of additional funds into the Fund until the issues outlined in the audit are addressed to the satisfaction of the neutral third party auditor.

7

1               **VII.  RELEASE AND COVENANT NOT TO SUE BY PLAINTIFFS**

2      12.

3             a.      Plaintiffs hereby forever release and discharge Defendants, PG&E, any

4 and all governmental bodies with jurisdiction related to OGS, and their respective past and

5 present officers, directors, partners, shareholders, members, joint venturers, agents, employees,

6 representatives, predecessors, successors, parents, subsidiaries, affiliates and/or assigns

7 ("Released Parties"), from any and all manner of actions, claims, causes of action, losses, suits,

8 debts, accounts, covenants, contracts, agreements, demands, obligations, direct, incidental,

9 consequential or punitive damages, liens, costs, expenses, fees and liabilities, in law or in equity,

10 whether administrative or judicial, whether subject to the jurisdiction of the U.S. EPA, PUC,

11 CEC, BAAQMD or any other federal, state, local or regional permitting agency, in each case of

12 any nature whatsoever, whether asserted or otherwise, known or unknown, fixed or contingent,

13 matured or unmatured (collectively, a "Claim" or "Claims"), which all or any of the Plaintiffs

14 ever had or now have or may hereafter have against the Released Parties or any of them to the

15 extent arising out of, resulting from or based in any way upon, (a) the development, construction,

16 ownership, proposed sale, commissioning or initial operation of OGS prior to the close of the

17 sale of OGS to PG&E; (b) any issue raised in the 60-day notice letters specifically regarding

18 OGS, complaints or petitions raised before the PUC, CEC, and California Supreme Court

19 specifically regarding OGS, and (c) claims Plaintiffs have raised, could have raised, or could

20 raise under the Clean Air Act, Endangered Species Act, National Environmental Policy Act,

21 California Environmental Quality Act, California Health & Safety Code or any other local, state,

22 or federal regulation or law governing the development, construction, ownership, proposed sale,

23 commissioning or initial operation of OGS prior to the close of the sale of OGS to PG&E;

24 provided, however, that nothing herein will affect Plaintiffs' relative rights or obligations in

25 respect of any Claim arising out of, resulting from or based upon a breach of this Consent Decree

26 by Defendants.  Except as necessary to enforce this Consent Decree, Plaintiffs agree not to bring

27 suit against OGS or any entity operating OGS for a period of five years following the close of the

28 sale of OGS to PG&E.

8

1    b.    Notwithstanding the above, Plaintiffs do not waive the right to bring any

2   action concerning OGS after the expiration of more than five (5) years after the close of the sale

3   of OGS to PG&E for claims other than those released above and that may arise following the

4   closing of such sale to the extent such claims are still within the statute of limitations.  Plaintiffs

5   further reserve the right to seek intervenor compensation from the PUC for all proceedings,

6   including proceedings involving OGS, notwithstanding the release of such claims contained in

7   this Paragraph.

8    **VIII.  CLAIMS BY THIRD PARTIES RELATED TO USE OF THE FUND**

9    13.    Fund Manager shall indemnify, defend and hold harmless Defendants from and

10  against any and all losses arising out of any and all claims brought against them by any third

11  party(ies) that receive funds from the Fund, enter into agreements with Plaintiffs or Fund

12  Manager related to the Fund, or that otherwise benefit from the Fund.  Fund Manager shall also

13  indemnify, defend and hold harmless Defendants from and against any and all losses arising out

14  of any and all claims brought against them by any federal, state, or local government agency

15  related to any project or program funded from the Fund.

16   **IX.  NON-TRANSFERABILITY.**

17   14.    The Plaintiffs hereby represent and warrant that they have not sold, transferred,

18  conveyed, pledged, or otherwise disposed of any of the Claims and that they will not sell,

19  transfer, convey, pledge or otherwise dispose of their interests in this Consent Decree, except as

20  provided in Paragraph 8.  In the event that any of the Plaintiffs sell, transfer, convey, pledge or

21  otherwise dispose of their interests in this Consent Decree, Defendants' obligations under this

22  Consent Decree cease and all funds in the Fund and any unspent funds that have been withdrawn

23  from the Fund by Fund Manager will be returned to CCGS within three (3) calendar days.

24   **X.  INTEGRATION**

25   15.    This document, including the attached Settlement Agreement, embodies the entire

26  terms and conditions of the Consent Decree described herein, and each Party acknowledges that

27  it has not relied on any warranties, representations or promises (whether oral or written) except

28  as set forth expressly in this Consent Decree.  Moreover, this Consent Decree, including the

1   attached Settlement Agreement, supersedes all prior agreements, understandings, negotiations,

2   and discussions (whether oral or written) among the Parties with respect to settling their

3   respective claims.  No supplement, modification, or waiver of this Consent Decree shall be

4   binding unless executed in writing on behalf of all of the Parties.  No waiver of any of the

5   provisions of this Consent Decree shall be deemed or shall constitute a waiver of any other

6   provision hereof (whether or not similar), nor shall such a waiver constitute a continuing waiver

7   unless otherwise expressly provided.

8                   **XI.  <u>RETENTION OF JURISDICTION</u>**

9          16.      The Court shall retain jurisdiction over this case until termination of this Consent

10   Decree for the purpose of resolving disputes arising under this Decree, entering orders modifying

11   this Decree, or effectuating or enforcing compliance with the terms of this Decree.

12          17.      Any proceeding or action arising out of or relating to this Consent Decree must be

13   brought in the United States District Court for the Northern District of California, and each of the

14   Parties irrevocably submits to the exclusive jurisdiction of this court in any such proceeding or

15   action, waives any objection it may now or hereafter have to venue or to convenience of forum,

16   agrees that all claims in respect of the proceeding or action shall be heard and determined only in

17   any such court, and agrees not to bring any proceeding or action arising out of or relating to this

18   Consent Decree or the transactions contemplated hereby in any other court.  However, if the

19   United States District Court for the Northern District of California does not concur that it has

20   jurisdiction over any such matters, then any such proceeding or action may be brought in any

21   court of competent jurisdiction with geographic jurisdiction including the City of Oakley,

22   California, and each of the Parties waives any objection it may now or hereafter have to venue or

23   to convenience of forum, agrees that all claims in respect of the proceeding or action shall be

24   heard and determined only in any such court, and agrees not to bring any proceeding or action

25   arising out of or relating to this Consent Decree or the transactions contemplated hereby in any

26   other court.  Notwithstanding anything in this Consent Decree to the contrary, in the event an

27   action is commenced in any court for any matter that Plaintiffs released or waived in this

28   Consent Decree, a counterclaim, counter-complaint, cross-claim, cross-complaint, or other court

1   filing may be filed and pursued in that same court to enforce the releases and waivers in this

2   Consent Decree.  Nothing herein contained shall be deemed to affect the right of any Party to

3   serve process in any manner permitted by law or to commence legal proceedings or otherwise

4   proceed against any other Party in any other jurisdiction, in each case, to enforce judgments

5   obtained in any action, suit or proceeding brought pursuant to this paragraph.

6                                    **XII.  NOTICES**

7        18.      All notices which are given or required to be given pursuant to this Consent

8   Decree shall, except as otherwise provided herein, be mailed postage-paid to the following

9   addresses:

10             (A)    CCGS

11                    P.O Box 1690
                      Danville, CA 94526
                      Attn:  Bryan J. Bertacchi/James McLucas

12             (B)    Radback

13                    P.O. Box 1690
                      Danville, CA 94526

14                    Attn:  Bryan J. Bertacchi/James McLucas

15

16             (C)    CBD

17                    Center for Biological Diversity
                      351 California St, Suite 600

18                    San Francisco, CA. 94104
                      Attn: Jonathan Evans

19

20             (D)    CBE

21                    Communities for a Better Environment
                      1904 Franklin Street, Suite 600

22                    Oakland, CA 94612
                      Attn: Shana Lazerow

23

24             (E)    WEI

25                    Wild Equity Institute
                      474 Valencia Street
                      Suite 295

26                    San Francisco, CA 94103
                      Attn:  Brent Plater

27

28             (F)    Additional copies for CCGS and/or Radback

Latham & Watkins LLP
355 South Grand Avenue
Los Angeles, CA 90071
Attn:  Robert A. Wyman/James L. Arnone

19.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

20.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIII.  EFFECTIVE DATE

21.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIV.  MUTUAL CONSTRUCTION

22.     Each of the Parties acknowledges that the contents of this Consent Decree have been negotiated by sophisticated parties, explained by duly authorized counsel, and that this Consent Decree is executed voluntarily and with full knowledge of its significance.  Each of the Parties participated and cooperated in the drafting and preparation of this Consent Decree. Accordingly, the Parties agree that neither this Consent Decree nor its terms should be construed against any of the Parties by reason of such Party's lack of participation in the drafting or preparation of this Consent Decree.

## XV.  ATTORNEYS' FEES

23.     CCGS will reimburse Plaintiffs for $100,000 in attorneys' fees arising from and relating to the dispute resolved herein and this Consent Decree.  Payment of these fees shall be made within thirty (30) days of the successful closing of financing for OGS construction.

## XVI.  DISMISSAL WITH PREJUDICE

24.     Following the execution and delivery of this Consent Decree, Plaintiffs shall dismiss with prejudice any and all claims released in Paragraph 12 that may then exist or be pending before any court, administrative agency, or other governmental forum with any

1  jurisdiction over the matters released in Paragraph 12.

2  ### XVII.  NO ADMISSION OF LIABILITY

3      25.    The Parties enter into this Consent Decree to avoid the expense and

4  inconvenience of further litigation.  Nothing in this Consent Decree shall imply any admission of

5  liability by any Party.

6  ### XVIII.  SEVERABILITY

7      26.    It is the belief of the Parties that this Consent Decree does not contain any

8  provision contrary to law.  However, if any part of this Consent Decree shall be determined to be

9  illegal, invalid, or unenforceable, that part shall be severed from this Consent Decree and the

10  remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill

11  the original intent of the Parties.

12  ### XIX.  FEES AND COSTS

13      27.    Except as provided in Paragraph 23, each Party shall bear its own costs and fees.

14  ### XX.  NO WAIVER

15      28.    No delay or omission by either Party hereto to exercise any right or power

16  occurring upon any default by the other Party with respect to any of the terms of this Consent

17  Decree shall impair any such right or power or be construed to be a waiver thereof.  A waiver by

18  any of the Parties hereto of any of the covenants, conditions, or agreements to be performed by

19  the other Parties shall not be construed to be a waiver of any succeeding breach thereof of any

20  covenant, condition, or agreement herein contained.

21  ### XXI.  CESSATION OR SUSPENSION OF PAYMENT OBLIGATIONS.

22      29.    CCGS' payment obligations under Paragraph 8 of this Consent Decree shall be

23  suspended in the event that OGS does not receive any permit or approval required for OGS's

24  construction, operation, or sale to PG&E, or any required extension(s) thereof, or in the event

25  any such permit, approval, or extension is withheld, revoked, overturned, or withdrawn by any

26  permitting agency, administrative body, or court of law, including but not limited to the PUC,

27  CEC, BAAQMD, U.S. EPA, or any state or federal court of law, but shall resume once OGS

28  returns to operation.  CCGS' payment obligations under Paragraph 8 of this Consent Decree

1   shall also be suspended in the event OGS voluntarily or involuntarily ceases operations or the

2   facility is permanently or temporarily shut down for more than twelve (12) months, but shall

3   resume once OGS returns to operation. CCGS' payment obligation under Paragraph 8 of this

4   Consent Decree shall terminate if Plaintiffs breach any material term of this Consent Decree.

5   ## XXII.  AUTHORITY, SIGNATURES, AND SERVICE

6   30.   Each Party hereby represents and warrants that: (i) the individual signing this

7   Consent Decree on its behalf is duly authorized to execute this Consent Decree on behalf of such

8   Party; (ii) such Party has the necessary power and authority to enter into this Consent Decree and

9   to carry out its obligations hereunder; and (iii) the execution and delivery of this Consent Decree,

10  the performance by Defendants or the Plaintiffs, as applicable, of its respective obligations

11  hereunder and the consummation by Defendants or the Plaintiffs, as applicable, of this Consent

12  Decree have been duly authorized by the appropriate internal authority in a manner authorized by

13  such Party's internal corporate governance procedures.

14  31.   This Consent Decree may be signed in counterparts, and its validity shall not be

15  challenged on that basis.  Parties agrees to accept service of process by mail with respect to all

16  matters arising under or relating to this Consent Decree and to waive the formal service

17  requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

18  applicable Local Rules of this Court including, but not limited to, service of a summons.

19  ## XXIII.  BINDING AGREEMENT

20  32.   This Consent Decree is binding upon and shall inure to the benefit of any and all

21  partners, successors, assignees, heirs, legatees, devisees, executors, administrators,

22  representatives and personal representatives of each of the Parties hereto.

23  ## XXIV.  MODIFICATION

24  33.   The terms of this Consent Decree may be modified by the Parties only by a

25  subsequent signed written agreement and upon approval by the Court.

26  ## XXV.  FINAL JUDGMENT

27  34.   Upon approval and entry of this Consent Decree by the Court, this Consent

28  Decree shall constitute a final judgment of the Court as to the Parties.  The Court finds that there

14

1   is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R.

2   Civ. P. 54 and 58.

3

4

5   The UNDERSIGNED PARTIES enter into this Consent Decree and submit it to this Court for

6   approval and entry.

7

8   Dated this _____ day of _____, 2013.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  For UNITED STATES OF AMERICA

2

3  _____     Date: _____, 2013

4

5  For COMMUNITIES FOR A BETTER ENVIRONMENT

6  _____     Date: _____, 2013

7

8  For CENTER FOR BIOLOGICAL DIVERSITY

9  _____     Date: _____, 2013

10

11  For WILD EQUITY INSTITUTE

12  _____     Date: _____, 2013

13

14  For RADBACK ENERGY, INC.

15  _____     Date: _____, 2013

16

17  For CONTRA COSTA GENERATING STATION, LLC

18  _____     Date: _____, 2013

19

20      Dated and entered this __ day of _____, 2013.

21

22                          _____

23                          UNITED STATES DISTRICT JUDGE
                            Northern District of California

24

25

26

27

28

16

# EXHIBIT B





# United States Department of the Interior

FISH AND WILDLIFE SERVICE
Sacramento Fish and Wildlife Office
2800 Cottage Way, Room W-2605
Sacramento, California 95825-1846

In Reply Refer To:
81420-2009-TA-1107

JUN 1 4 2013

Bryan J. Bertacchi
Radback Energy, Inc.
P.O. Box 1690
Danville, California 94526

Subject:     The Oakley Generating Station Conservation Agreement for Endangered Species
             Mitigation and Habitat Restoration

Dear Mr. Bertacchi:

The U.S. Fish and Wildlife Service (Service) has reviewed the new Oakley Generating Station
Conservation Agreement for Endangered Species Mitigation and Habitat Restoration
("Conservation Agreement") (attached as Exhibit A) recently executed by Contra Costa
Generating Station LLC ("CCGS"), Radback Energy, Inc. ("Radback"), (collectively "Energy
Companies"), the Center for Biological Diversity ("CBD"), Wild Equity Institute ("WEI") and
Communities for a Better Environment ("CBE") (collectively "Conservation Groups"). At issue
are the potential adverse effects of nitrogen deposition from the Oakley Generating Station
(Oakley Facility) on endangered Lange's metalmark butterfly (*Apodemia mormo langei*),
endangered Contra Costa wallflower (*Erysimum capitatum* var. *angustatum*), endangered
Antioch Dunes evening primrose (*Oenothera deltoides* ssp. *howellii*), and designated critical
habitat for the two listed plants.

Based upon new information provided to the Service, and specifically conservation actions that
will be implemented to protect listed species pursuant to the Conservation Agreement, the
Service believes that the adverse effects of increased nitrogen deposition at the Antioch Dunes
National Wildlife Refuge (ADNWR) which may result from the operation of the Oakley Facility
will be offset by the implementation of the Conservation Agreement.

The Conservation Agreement provides for the creation of, and significant financial contributions
to, a fund for species or habitat restoration and maintenance activities that will help protect and
conserve the Lange's metalmark butterfly, Contra Costa wallflower, and Antioch Dunes evening
primrose that may be spent on a variety of activities including: (1) captive breeding of the
Lange's metalmark butterfly; (2) planting of the naked-stem buckwheat, Contra Costa
wallflower, or Antioch Dunes evening primrose in the ADNWR; (3) sponsorship of a qualified
individual or individuals to study or engage in conservation efforts for the Lange's metalmark
butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose; (4) creation of
additional habitat for the Lange's metalmark butterfly, Contra Costa wallflower, or Antioch
Dunes evening primrose; (5) maintenance and/or restoration of Lange's metalmark butterfly,

Mr. Bryan J. Bertacchi:                                                                                    2

Contra Costa wallflower, or Antioch Dunes evening primrose habitat; and (6) sponsorship of community education or interpretive outreach relating to preservation of the Lange's metalmark butterfly, Contra Costa wallflower, or Antioch Dunes evening primrose, consistent with biological needs.

The primary adverse effect of airborne nitrogen deposition at ADNWR is the resulting proliferation of weedy grass and herb species that displace the Antioch Dunes primrose, Contra Costa wallflower, and native host plants and nectar sources for the Lange's metalmark butterfly. The Conservation Agreement will provide funding for removal of exotic weeds, dunes restoration, captive propagation of the Lange's metalmark butterfly, and planting of the naked-stem buckwheat, Contra Costa wallflower, and Antioch Dunes evening primrose beyond what is currently being implemented.  The Service believes that the benefits of these conservation actions will be sufficient to offset potential adverse effects to these species which may result from the increase in nitrogen deposition at ADNWR from the operation of the Oakley facility. Therefore, the Service believes that actions to be funded by the Conservation Agreement will fully offset the potential effects of nitrogen deposition from the Oakley facility to the Lange's metalmark butterfly habitat, the Antioch Dunes evening primrose, the Contra Costa wallflower and critical habitat for the listed plants.

This letter updates the letters the Service previously submitted to the California Energy Commission ("CEC") on October 12, 2010, February 14, 2011, and April 28, 2011, and U.S. EPA Region 9 on June 29, 2011, and comments the Service made at a hearing before the CEC on March 15, 2011, regarding the potential effects of nitrogen oxide emissions from the Oakley Facility on these species.

The Service is responsible for administering the Endangered Species Act of 1973, as amended ("Act"), including Sections 7, 9, and 10.  Section 9 of the Act and its implementing regulations prohibit the taking of any federally listed endangered or threatened species.  Section 3(19) of the Act defines "take" to include to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct.  Service regulations define "harass" as any intentional or negligent act or omission that creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering.  50 C.F.R. §17.3.  "Harm" is defined as an act which actually kills or injures wildlife and includes significant habitat modification or degradation which actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding, or sheltering.  50 C.F.R. §17.3.  The Act provides for civil and criminal penalties for the unlawful taking of listed species.

CCGS and Radback have obtained approval from the CEC and California Public Utilities Commission ("CPUC") to construct and operate the Oakley Facility, a 624-megawatt, natural-gas-fired, fast start power plant in Oakley, California.  The Oakley Facility is currently scheduled to start operating in approximately 2016.  The Oakley Facility is located approximately 1.6 miles generally downwind from the Antioch Dunes National Wildlife Refuge ("ADNWR"), which is known habitat of the Lange's metalmark butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose.

The Service's comments regarding the Conservation Agreement are based on the best scientific evidence available including scientific and technical literature, information provided to the Service by the CEC and members of the public, recent air modeling data, the Conservation Agreement, and information contained in our own records.  In particular, based upon the

Mr. Bryan J. Bertacchi:                                                                                    3

Service's review of the Conservation Agreement, we are satisfied that it adequately incorporates the Service's recommendations for protecting and conserving the Lange's metalmark butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose. These new measures are in addition to the measures already required by the CEC's May 18, 2011, Oakley Order. The CEC required the Oakley Facility to offset potential facility emissions (98.78 annual tons of NOx, 29.6 annual tons of VOC), to donate $2.5 million in funding to the Bay Area Clean Air Foundation, and to provide additional mitigation of $5,000 per year to the California Wildlife Foundation, or other approved entity, to address potential nitrogen impacts at ADNWR

The Service's position is valid only for the project as currently proposed and approved by the CEC, and as outlined in the Conservation Agreement for the Oakley Facility. It applies only in the unique circumstances of the Oakley Facility and Conservation Agreement, and does not apply to other facilities or projects that result in nitrogen oxide emissions. If your project is modified in a manner that has the potential to adversely affect the Lange's metalmark butterfly, Contra Costa wallflower, and Antioch Dunes evening primrose or the designated critical habitat of these species, or result in a take of the Lange's metalmark butterfly, the Service recommends that you contact our office immediately so the Service can determine if additional analysis is necessary. As a reminder, this letter does not constitute authorization from the Service to take any federally listed species in any manner.

Please contact Stephanie Jentsch, Ryan Olah, or Chris Nagano at the letterhead address, via electronic mail, or by telephone 916-414-6600, if you have any questions regarding this letter.

Sincerely,

Jan C. Knight
Acting Field Supervisor

Attachments: Exhibit A

cc:
Jonathan Evans, Center for Biological Diversity, San Francisco, California
Shana Lazerow, Communities for a Better Environment, Oakland, California
Brent Plater, Wild Equity Institute, San Francisco, California
Robert A. Wyman and James L. Arnone, Latham & Watkins LLP, Los Angeles, California